# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| JORGE O. CHABRIER ROSELLO, | ) Case No. |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) **COMPLAINT FOR** |
| vs. | ) **VIOLATION OF THE** |
| | ) **FEDERAL SECURITIES LAWS** |
| FAIRMOUNT SANTROL HOLDINGS INC., | ) |
| WILLIAM E. CONWAY, JENNIFFER D. | ) JURY TRIAL DEMANDED |
| DECKARD, MICHAEL G. FISCH, | ) |
| CHARLES D. FOWLER, STEPHEN J. | ) |
| HADDEN, MICHAEL C. KEARNEY, | ) |
| WILLIAM P. KELLY, MATTHEW F. | ) |
| LEBARON, MICHAEL E. SAND, and | ) |
| LAWRENCE N. SCHULTZ, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff Jorge O. Chabrier Rosello ("Plaintiff"), by his undersigned attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

## NATURE AND SUMMARY OF THE ACTION

1. Plaintiff, a stockholder of Fairmount Santrol Holdings Inc. ("Fairmount" or the "Company") brings this action against the Company and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) & 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §§ 240.14a-9, 244.100, & 229.1015(b)(4), arising out of the definitive merger agreement between and among Fairmount and

Unimin Corporation ("Unimin") and its parent company, SCR-Sibelco NV (the "Merger Agreement").

2. On December 12, 2017, the Company and Unimin issued a joint press release announcing that the Board had caused the Company to enter into the Merger Agreement on December 11, 2017. Pursuant to the Merger Agreement, Fairmount common stockholders and holders of Fairmount equity awards will control 35% of the combined Company and total cash consideration of $170,000,000, or approximately $0.74 per share (the "Merger Consideration").

3. On April 18, 2018, Defendants authorized the filing of a Form S-4/A Registration Statement (the "Registration Statement") with the SEC designed to convince Fairmount stockholders to approve the Proposed Transaction. The Registration Statement is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding (i) the Company's financial projections; and (ii) the valuation analyses conducted by the Company's financial advisor, Wells Fargo Securities, LLC ("Wells Fargo") to support its fairness opinion; and (iii) the Board's process leading up to approval of the Merger Agreement.

4. The special meeting of Fairmound stockholders to vote on the Proposed Transaction is forthcoming (the "Stockholder Vote"). Therefore, it is imperative that the material information omitted from the Registration Statement is disclosed to the Company's stockholders prior to the Stockholder Vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from consummating the Proposed Transaction unless and until the material information discussed below is disclosed to Fairmount's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**PARTIES**

6. Plaintiff is, and has been at all relevant times, a stockholder of Fairmount.

7. Fairmount is a corporation organized and existing under the laws of the State of Delaware. It maintains its principal executive offices at 8834 Mayfield Road, Chesterfield, Ohio, 44026. The Company's common stock is listed on the New York Stock Exchange under the ticker symbol "FMSA." Fairmount is named as a defendant herein solely for the purpose of providing full and complete relief.

8. Defendant William E. Conway has served as Chairman of the Board (emeritus) since 2010.

9. Defendant Jenniffer D. Deckard has served as President, Chief Executive Officer and as a director of the company since 2013.

10. Defendant Michael G. Fisch has served as a director of the Company since 2015.

11. Defendant Charles D. Fowler has served as a director of the Company since 1984.

12. Defendant Stephen J. Hadden has served as a director of the Company since 2015.

13. Defendant Michael C. Kearney has served as a director of the Company since 2015 and serves as the Lead Independent Director.

14. Defendant William P. Kelly has served as a director of the Company since 2005.

15. Defndant Matthew F. LeBaron has served as Chairman o the Board since 2010.

16. Defendnat Michael E. Sand has served as a directorf of the Company since 2010.

17. Defendant Lawrence N. Schultz has served as a director of the Company since 2010.

18. The defendants described in ¶ 8 through ¶ 17 are referred to herein as the "Individual Defendants."

19. Collectively, Fairmount and the Individual Defendants are referred herein as "Defendants."

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

21. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

22. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because (i) the conduct at issue took place and had an effect in this District; (ii) Fairmount maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

23. On December 12, 2017, the Company and Unimin issued a joint press release announcing the Proposed Transaction. The Press Release read in relevant part:

> S CHESTERLAND, Ohio and NEW CANAAN, Conn., Dec. 12, 2017 (GLOBE NEWSWIRE) -- Fairmount Santrol (NYSE:FMSA) ("Fairmount") and Unimin Corporation ("Unimin"), a wholly owned subsidiary of SCR-Sibelco NV ("Sibelco"), today announced that the Boards of Directors of both

companies have approved a definitive agreement under which Fairmount and Unimin will combine in a tax-free, cash and stock transaction.

A photo accompanying this announcement is available at http://www.globenewswire.com/NewsRoom/AttachmentNg/fd554f8b-12d9-4080-916c-8b1c5ddc001d

The new company, which will list on the New York Stock Exchange, will combine the two organizations' strong product portfolios and asset footprints to create an industry-leading proppant and industrial materials solutions provider, serving both energy and industrial customers. The combined company is expected to have 45 million tons of annual sand and mineral processing capacity and 3.0 million tons of annual coating capacity. In addition, the combined company will operate a comprehensive logistics platform with a large-scale terminal network across North America, comprising 96 distribution terminals with 18 unit-train capable terminals, and access to all major railways serving major oil and gas basins.

On a pro forma basis, the new company would have had revenue of approximately $2.0 billion and Adjusted EBITDA of approximately $400 million, excluding expected synergies, for the 12 month period ended September 30, 2017. The industrial segment represents 45% of gross profit and the proppants segment represents 55%.

The transaction is expected to generate significant shareholder value, including a $170 million cash payment to Fairmount shareholders. In addition, it is expected to strengthen the companies' leadership positions in serving both the industrial and energy markets through a broader, more diverse product offering and logistics footprint. The combined company is targeting $150 million of identified annual operational synergies, resulting in over $1 billion in value creation.

"This is a compelling transaction for our shareholders and for our many other stakeholders, including our customers, employees and communities," said Jenniffer Deckard, President and Chief Executive Officer of Fairmount Santrol. "By combining the complementary strengths of both Unimin and Fairmount Santrol, we will create a premier provider of industrial materials and proppant solutions with benefits and growth opportunities that far surpass what either company could achieve alone. Together we will serve our customers more efficiently and effectively with a broader and more diverse product offering, greater technical expertise, improved scale and geographic diversity and an expanded logistics platform. We have long respected the Unimin organization and believe our shared cultures of sustainability and long-term value creation will enable us to realize the benefits of this merger."

Campbell Jones, President and Chief Executive Officer of Unimin, said, "We are excited to join forces with Fairmount as we believe this combination is an

ideal fit for our value-driven orientation and long-term vision of strength through diversity of products and end markets. Fairmount is an excellent partner for Unimin and shares our strategy of providing superior and innovative product solutions for the growing energy and industrial segments. Together, our combined network of flagship plants, terminals and rail access will deliver greater capacity and more cost-competitive supply to meet our customers' needs."

Matthew LeBaron, Chairman of the Fairmount Santrol Board of Directors, said, "We are pleased with this combination, which brings together two industry leaders at an opportune time in the industry. This transaction will deliver significant value for Fairmount shareholders through immediate cash consideration and the opportunity to participate in the upside of the combined company. The combined company will have a strong capital structure, backed by diverse cash flow streams, which will position it to make strategic growth investments and further enhance returns for shareholders. On behalf of my fellow directors, we look forward to what Fairmount and Unimin will accomplish together."

"This combination is a unique opportunity to create an industry-leading company with the ability to generate significant long-term value for shareholders," said Jean-Luc Deleersnyder, Chief Executive Officer of Sibelco. Mr. Deleersnyder continued, "We are confident that the combined company will be in a strong position to leverage its strengths to generate significant cash flow that can be used to capture targeted growth opportunities and to reduce debt. Our position as a long-term investor reflects our belief in the value that will be created by the merger and enables the consolidated entity to leverage our global capabilities."

**Strategic and Financial Position of the Combined Company**

**Leading materials solutions provider to both the energy and industrial segments**: The combined company will be a leading industrial materials and proppant solutions provider with improved scale, approximately 45 million tons of annual sand and mineral production capacity, and more than 1.3 billion tons of combined reserves. The combined entity will be the largest provider of proppant solutions to the energy industry and of industrial materials solutions, will possess the most extensive technical and applications expertise, and will have the largest portfolio of high-purity sands and nepheline syenite production in North America.

**Diversification across assets, geographies and end markets**: The combined company's complementary asset footprint is well positioned to serve resilient and attractive markets including oil & gas, glass, construction, ceramics, coatings, polymers and foundry markets. Through both strategically located plants and an enhanced distribution network with access to all major rail lines,

6

the combined company will have an exceptional position to deliver products and services to a broad customer base across energy and industrial markets.

**Significant value creation through operational synergies and greater access to diverse and growing industrial business**: The combined company expects to further enhance earnings and value through substantial operational synergies, targeting $150 million in annual synergies, and capturing 50% of the synergies in the first year following close. The new company's significant and more predictable cash flow generation is a benefit of more diverse revenue streams from the industrial segment strengthened by combinational synergies, increased scale and complementarity of assets. These synergies and improved cash flows will provide the combined company with increased financial flexibility, including the ability to reduce leverage and make strategic investments.

**Key Transaction Terms and Details**

Under the terms of the merger agreement, at the closing of the transaction, Fairmount shareholders, including equity award holders, will receive $170 million in cash, or approximately $0.74 per share based on Fairmount's current diluted share count, and will own 35% of the combined company, with Sibelco owning the remaining 65%. The transaction is structured to be tax-free to Fairmount shareholders. Sibelco will maintain ownership of Unimin's high-purity quartz business, which mainly serves electronics manufacturers in Asia.

In connection with the transaction, Unimin has secured fully committed financing from Barclays Bank PLC and BNP Paribas to refinance both companies' outstanding debt obligations and certain transaction expenses. The companies believe that the strong and diversified cash flow resulting from the combination will allow the combined company to pay down debt expeditiously.

Concurrent with closing, the combined company intends to list its shares on the New York Stock Exchange, while Fairmount will be delisted from the New York Stock Exchange.

**Governance, Leadership and Headquarters**

Upon closing, the combined company's Board of Directors is expected to comprise 11 members, six of whom will be recommended by Sibelco, including Jean Luc Deleersnyder, Sibelco's Chief Executive Officer, and four of whom will be recommended by Fairmount. Jenniffer Deckard, current Chief Executive Officer of Fairmount Santrol, is expected to serve as CEO and as a director of the combined company. Sibelco has the right to nominate the independent Chairman of the combined company.

The executive leadership team will include a combination of existing leaders from both Unimin and Fairmount, with the combined company leaning on the significant strengths of the quality workforce across both companies.

>The location of the combined entity's headquarters will be determined prior to closing, and the combined company will maintain regional offices in order to leverage both companies' significant operating presence, strong partnerships and talented employee bases. Unimin and Fairmount have highly recognizable and well respected names, and the name of the combined company will be determined before the closing of the transaction.

**The Registration Statement Misleads Fairmount Stockholders by Omitting Material Information**

24. On April 18, 2018, the Company filed the materially misleading and incomplete Registration Statement with the SEC. Designed to convince stockholders to vote in favor of the Proposed Transaction, the Registration Statement is rendered misleading by the omission of critical information concerning the Company's expected future value as a public entity as evidenced by the Company's financial projections, the financial analyses conducted by Wells Fargo, and the process undertaken by the Board leading up to the signing of the Merger Agreement.

*Material Omissions Concerning the Company's Financial Projections*

25. The Registration Statement discloses projections of the non-GAAP accounting metrics Adjusted EBITDA and Unlevered Free Cash Flow for both Fairmount and Unimin in the years 2017 through 2020.

26. Providing these non-GAAP metrics without disclosing the line item metrics used to calculate them, or otherwise reconciling the non-GAAP projections to GAAP measures, makes the provided disclosures materially incomplete and misleading.

27. The Registration Statement fails to disclose the line items underlying EBITDA necessary to reconcile EBITDA to GAAP measures, as well as the definition of EBITDA used by Fairmount management and Wells Fargo., including (i) net income; (ii) interest expense; (iii) income taxes; (iv) depreciation and amortization; (v) non-cash income or loss related to derivative instruments; (vi) non-cash stock compensation expense; (vii) impairment losses, gains or losses on asset or business disposals or acquisitions; (viii) gains or losses on the repurchase, redemption

8

or early retirement of debt; (ix) earnings from unconsolidated investments; and (x) distributions from unconsolidated investments.

28. The Registration Statement also fails to disclose the line items underlying Unlevered Free Cash Flow necessary to reconcile it to GAAP measures, including (i) unlevered cash taxes; (ii) capital expenditures; and (iii) changes in working capital.

29. The Registration Statement omits such a reconciliation despite providing line items to reconcile historical Adjusted EBITDA for both Unimin and Fairmount as far back as 2013. Registration Statement at 39-42.

30. Without disclosure of these reconciling metrics, the Registration Statement violates SEC regulations and materially misleads Fairmount stockholders.

### *Wells Fargo's Valuation Analyses and Fairness Opinion*

31. With respect to Wells Fargo's *Selected Companies Analysis*, the Registration Statement fails to disclose the individual multiples Wells Fargo calculated for each company utilized. The omission of these multiples renders the summary of the analysis and the implied values materially misleading. A fair summary of the analyses requires the disclosure of the individual multiples; merely providing the range that a banker applied is insufficient, as Fairmount stockholders are unable to assess whether Wells Fargo applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down the Company's valuation.

### *Material Omissions Concerning the Sales Process*

32. The Registration Statement also fails to disclose or misstate material information relating to the sale process leading up to the Proposed Transaction.

33. The Registration Statement discloses that Fairmount entered into confidentiality agreements with Party A and Party B in order to facilitate due diligence for a potential strategic

9

transaction. However, the Registration Statement omits whether these confidentiality agreements included standstill provisions or so-called "don't-ask-don't-waive" ("DADW") standstill provision that presently preclude potential bidders Party A and Party B from making a topping bid for the Company. Such information is material to Fairmount stockholders as a reasonable Fairmount stockholder would find it material and important to their voting decision whether or not parties that had previously been interested in a potential acquisition of the Company are now foreclosed from submitting superior proposals.

34. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention

## CLAIMS FOR RELIEF

## COUNT I

### Claim for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Fairmount

63. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Fairmount is liable as the issuer of these statements.

65. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

10

66. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

67. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

68. The Registration Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

69. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

70. Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

71. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72. The Individual Defendants acted as controlling persons of Fairmount within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Fairmount and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

73. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

74. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

75. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

76. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.	In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.	Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.	Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E.	Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.	Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: May 1, 2018

Respectfully submitted,

**KARON, LLC**

By: /s/ *Daniel R. Karon*
Daniel R. Karon (0069304)
Beau D. Hollowell (0080704)
700 W. St. Clair Ave., Suite 200
Tel: (216) 622-1851
Fax: (216) 241-8175
dkaron@karonllc.com
bhollowell@karonllc.com

*Attorneys for Plaintiff*

**LEVI & KORSINSKY, LLP**
Donald J. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: denright@zlk.com
	etripodi@zlk.com

*Attorneys for Plaintiff*

13